IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher L. Hackett,                        :
                          Petitioner           :
                                               :
              v.                               :   No. 538 F.R. 2018
                                               :   Submitted: September 10, 2025
Commonwealth of Pennsylvania,                  :
                          Respondent           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  December 8, 2025


        Before the Court *en banc* are Exceptions filed by Christopher L. Hackett to
this Court's Memorandum Opinion and Order (Order) that affirmed the Board of
Finance and Revenue (BFR)'s order, denying Mr. Hackett's Petition for
Reassessment of personal income tax (PIT) for the 2014 tax year. *See Hackett v.
Commonwealth* (Pa. Cmwlth., No. 538 F.R. 2018, filed January 26, 2024)
(*Hackett I*).  Mr. Hackett takes exception to this Court's determination that the
business expenses he deducted on his PIT return were not allowable deductions.
Discerning no error in the Court's decision in *Hackett I*, we overrule the Exceptions.

A full recitation of the facts is set forth in *Hackett I*, so we need not set them forth again.[1] *See Hackett I*, slip op. at 1-4. For purposes of this opinion, it suffices to say Mr. Hackett is sole proprietor of Rides2Work (R2W), which is essentially a website for carpoolers. It connects drivers with riders in the northeastern Pennsylvania area. Although Mr. Hackett originally intended to charge for the service, that never materialized because of lack of sufficient interest. He shut down the site in 2015.

On his 2014 PIT return, Mr. Hackett reported no income from R2W and deducted $109,600 in business expenses related to R2W. The Department of Revenue (Department) disallowed the expense on the basis that R2W was not considered a "commercial enterprise" under Section 301(c) of the Tax Reform Code of 1971, 72 P.S. § 7301(c).[2] As a result of the disallowance, the Department assessed more than $35,000 in additional PIT, inclusive of interest and penalties.

Thereafter, Mr. Hackett sought a reassessment with the Board of Appeals, which denied the reassessment. Mr. Hackett then filed an appeal with BFR, which likewise denied the appeal, concluding Mr. Hackett did not meet the three criteria in the Department's regulations for determining what constitutes net profits, specifically:

(b) To constitute net profits, all of the following must apply:

---

[1] The parties stipulated to the facts pursuant to Rule 1571(f) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1571(f).

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7301(c). Section 301 was added by Section 4 of the Act of August 31, 1971, P.L. 362. Section 301(c) defines "[b]usiness" as "an enterprise, activity, profession, vocation, trade, joint venture, commerce or any other undertaking of any nature when **engaged in as commercial enterprise** and conducted for profit or ordinarily conducted for profit, whether by an individual, partnership, Pennsylvania S corporation, association or other unincorporated entity." 72 P.S. § 7301(c) (emphasis added).

(1) The gross profits shall be derived from one of the following:

(i) The marketing of a product or service to customers on a commercial basis or from securities employed as working capital in the business operations.

(ii) Accounts and notes receivable from sales of products or services sold in the ordinary course of the business operations.

(iii) Assets which serve an operational function in the ordinary course of business operations.

(2) The marketing activity shall be conducted with the manifest objective of achieving profitable operations.

(3) The marketing activity shall be conducted with regularity and continuity and may not be limited or exclusive.

61 Pa. Code § 103.12(b). These criteria are frequently referred to as the "commercial enterprise test."

Mr. Hackett subsequently petitioned for review with this Court, arguing R2W was a business under the Tax Reform Code, and, therefore, he was entitled to deduct expenses associated therewith. A three-judge panel reasoned, based on President Judge Bowman's opinion in *Morgan v. Commonwealth*, 400 A.2d 1384 (Pa. Cmwlth. 1979), that a "commercial enterprise" required "the rendering of goods or services to others in a marketplace." *Hackett I*, slip op. at 6. We then turned to the dictionary definition of "marketplace," as a "place . . . where public sales are held," and "sales" as "operations and activities involved in promoting and selling goods or services" or "gross receipts." *Id.* at 6-7. Applying these definitions, we concluded Mr. Hackett had not established R2W was a commercial enterprise because it did not charge or collect any fees or have gross receipts, meaning "it did not 'sell' any

3

of its services." *Id.* at 7. Therefore, while R2W provided services to others, it did not do so in the marketplace. *Id.*

We also held Mr. Hackett did not meet the first criteria of the commercial enterprise test related to net profits set forth in the Department's regulation. In doing so, we rejected Mr. Hackett's interpretation of the Department's regulation, that it applies only if gross profits are produced, stating Mr. Hackett was reading the word "if" into the regulation, where it was otherwise lacking. *Id.* at 8-9. We held the regulation's plain language "*assumes* the existence of gross profits, unambiguously stating that '*all of the following must apply*.'" *Id.* at 9 (emphasis in original). Therefore, we explained, "'[t]o constitute net profits,' there must first be 'gross profits,' and those 'gross profits shall derive' from one of the three enumerated activities." *Id.* (quoting 61 Pa. Code § 103.12(b)(1)). Accordingly, we affirmed BFR's order.

Thereafter, Mr. Hackett filed the instant Exceptions pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), Pa.R.A.P. 1571(i).[3] In his Exceptions, Mr. Hackett raises two issues: (1) whether a commercial enterprise must earn receipts from a sale to render goods or services in the marketplace; and (2) whether a business must earn receipts for its net losses to be included in the calculation of net profits. More specifically, Mr. Hackett takes issue with the Court's resort to and use of what

---

[3] Rule 1571(i) provides:

Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect, for the purposes of Pa.R.A.P. 1701(b)(3) (authority of a trial court or other government unit after appeal), of an order expressly granting reconsideration of the determination previously entered by the court. Issues not raised on exceptions are waived and cannot be raised on appeal.

Pa.R.A.P. 1571(i).

4

he considers is an outdated, narrow dictionary definition of "marketplace," which bears no reasonable relation to today's business world, and was ultimately taken out of context. Mr. Hackett asserts the term "marketplace" is absent from the relevant statute, and therefore, the Court should not have looked to it. To the extent the Court relied upon *Morgan* and its discussion of commercial enterprise and marketplace, Mr. Hackett argues the Court in *Morgan* acknowledged it did not engage in any meaningful analysis of the terms. In Mr. Hackett's view, the terms contemplate future sales, not just immediate ones, and because R2W was developed with recruiting future, paying customers in mind, it should be included in the definition of "commercial enterprise." At a minimum, Mr. Hackett asserts the term is ambiguous and under well-settled tax law, it should be strictly construed in favor of him, as the taxpayer.

Second, Mr. Hackett argues the regulations do not require a business to earn receipts to contribute towards the calculation of net profits. Mr. Hackett asserts a business could have total sales revenue of zero. Mr. Hackett also asserts that gross profits are not needed to produce net profits. According to Mr. Hackett, "net profits," as used in the statute and regulations, is different. Specifically, Mr. Hackett claims the term is a class of taxable income when used in the statute, but in the regulations, it refers to amounts earned by individual businesses. Mr. Hackett asserts that net profits from one business can be used to offset net losses from another, resulting in zero net profits for purposes of taxable income. The regulation's reference to gross profits, Mr. Hackett contends, is simply that overall, there must be gross profits, not that each individual business must have a net profit. Alternatively, Mr. Hackett again asserts the regulation is ambiguous and, thus, should be construed in his favor. To the extent the regulation does impose a receipt

5

requirement, Mr. Hackett asserts the regulation would be invalid as being outside the statute.

The Competitive Enterprise Institute filed an amicus brief in support of Mr. Hackett.[4]  Therein, it also argues the Court erred in its interpretation of "marketplace." It argues start-up businesses do provide goods/services at little to no cost at first with the goal of becoming profitable, and these future sales do not remove them from the marketplace. It asserts commercial enterprise is broad and includes those engaged in a profession or other activity.

The Commonwealth responds that the Court properly applied the *Morgan* definition of "marketplace." Recognizing that the statute does not reference "marketplace," the Commonwealth explains that, in *Morgan*, the Court held an essential feature of a commercial enterprise is the requirement that it render goods/services in a marketplace. Remuneration for services or sale of goods is required. The Commonwealth argues the Court's interpretation of "marketplace" is consistent with the definition of "marketplace" in Section 201(iii) of the Sales and Use Tax section of the Tax Reform Code, which defines it as "facilitat[ing] the sale at retail of tangible personal property." 72 P.S. § 7201(iii).  Even if the Court were to adopt Mr. Hackett's interpretation, the Commonwealth maintains the result is the same.  "[T]he key aspect of commerce has always been a give-and-take," (Commonwealth's Brief at 16), and here there was just give. The Commonwealth also denies the Tax Reform Code is ambiguous. If the Court were to find it

---

[4] In a footnote in its brief, the Commonwealth argues the amicus brief is late because it was not filed at the same time as Mr. Hackett's brief. Rather, it was filed three days later. The amicus brief, however, was filed by the deadline established for Mr. Hackett's brief. Mr. Hackett simply filed his brief before the deadline. Thus, the amicus brief will be considered.

ambiguous, the Commonwealth asserts we should defer to its interpretation set forth in the Department's regulations.

In addition, the Commonwealth argues the Court correctly applied the regulation in concluding that gross profits are required. The Commonwealth argues the regulation clearly states certain conditions "must" apply, of which gross profits is one. To the extent Mr. Hackett and amici argue the decision threatens new business because start-up costs cannot be deducted, the Commonwealth disagrees, claiming they are conflating two concepts: (1) not offering goods/services for sale, which is the holding in *Hackett I*, and (2) expenses exceeding profits from the sale of those goods/services. Moreover, the Commonwealth points out that new businesses can amortize start-up costs.

After careful review of the record, briefs, and law, the Court finds that the issues raised by Mr. Hackett were thoroughly addressed in *Hackett I*. We discern no error in the Court's reliance on *Morgan*, or the Court's interpretation of the relevant terms "commercial enterprise" or "marketplace." Nor do we discern any error in the *Hackett I* Court's application of the law or those terms to the stipulated facts here. In *Hackett I*, the Court resorted to common rules of statutory construction in interpreting some of the terms, which Mr. Hackett claims should not apply because we were interpreting terms in a judicial opinion not a statute. However, Mr. Hackett does not cite any authority for why the construction rules would be inapplicable, nor could the Court find any. If the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991, provides rules to interpret statutes, it follows that those same rules would logically extend to caselaw. While not binding, they could provide persuasive authority as to how to approach interpreting terminology.

7

Accordingly, we overrule the Exceptions filed by Mr. Hackett and direct that judgment be entered in favor of the Commonwealth.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher L. Hackett,           :
                    Petitioner    :
                                  :
            v.                    :     No. 538 F.R. 2018
                                  :
Commonwealth of Pennsylvania,     :
                    Respondent    :

# **O R D E R**

**NOW**, December 8, 2025, the Exceptions filed by Petitioner Christopher L. Hackett to this Court's Memorandum Opinion and Order in *Hackett v. Commonwealth* (Pa. Cmwlth., No. 538 F.R. 2018, filed January 26, 2024), are **OVERRULED**. The Prothonotary is directed to enter judgment in favor of Respondent Commonwealth of Pennsylvania.

_____
RENÉE COHN JUBELIRER, President Judge